IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY | : | CIVIL ACTION |
| | : | |
| | : | No. 16-759 |
| v. | : | |
| | : | |
| SELECTIVE INSURANCE COMPANY OF AMERICA | : | |
| | : | |

**MEMORANDUM**

**Juan R. Sánchez, C.J.**                                                        September 27, 2018

      This is a declaratory judgment action concerning which of two insurance companies is obligated to defend and indemnify the defendants in an underlying slip and fall action filed by Harold and Marianne Sacks against the owners and managing agents of the Stoney Creek Center, the shopping center where the accident occurred. Plaintiff Liberty Mutual Insurance Company, the insurer of the owners and managing agents of the Stoney Creek Center, contends Defendant Selective Insurance Company of America, the insurer of Business 21, LLC—a tenant in the Stoney Creek Center and Harold Sacks's employer at the time of the accident—is obligated to defend and indemnify Liberty Mutual's insureds in the underlying action as additional insureds under the policy Selective issued to Business 21. Both parties have moved for summary judgment. For the reasons set forth below, Selective's motion will be granted.

**FACTS[1]**

      In January 2014, Harold Sacks, an employee of Business 21 Publishing, LLC, was seriously injured during a break from work when he slipped and fell on a defective sidewalk at

---

[1] In evaluating a motion for summary judgment, a court must "view the facts in the light most favorable to the non-moving party and must make all reasonable inferences in that party's favor." *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

the Stoney Creek Center, the shopping center where Business 21 was a tenant. Prior to his fall, Sacks used the sidewalk where the accident took place approximately twice a week for six to seven years. Pl.'s Mot. for Summ. J., at 33-34.

In June 2014, Sacks and his wife filed a negligence action against six entities affiliated with the Stoney Creek Center—AMC Delancey Stoney Creek Associates, L.P.; AMC Delancey Stoney Creek Partners, L.P.; AMC Delancey Stoney Creek LLC; AMC Delancey Group, Inc.; Metro Commercial Real Estate, Inc.; and Metro Commercial Management Services, Inc. (the Underlying Defendants)—seeking damages for injuries Sacks sustained as a result of his fall and his wife's loss of consortium. According to the complaint in the underlying action, the defective sidewalk where Sacks fell had a piece of concrete missing and a "crack/hole/depression," creating a tripping hazard for pedestrians. Underlying Compl. ¶ 14. The Sackses further alleged the Underlying Defendants and their agents, servants, workmen, and/or employees were on notice of the dangerous condition of the sidewalk, yet failed to remedy the safety hazard, and were therefore negligent with respect to the condition of the sidewalk.

The Underlying Defendants referred the slip and fall action to Liberty Mutual, their general liability carrier. In July 2014, Liberty Mutual tendered defense and indemnification of the matter to Selective, Business 21's insurer, asserting that Selective was obligated to defend and indemnify the Underlying Defendants as additional insureds on the policy Selective issued to Business 21. At the time of the accident, Business 21 occupied two adjacent units in the Stoney Creek Center. Under the terms of its lease with AMC Delancey Stoney Creek Partners, L.P., Business 21 leased the following:

> 2. DEMISED PREMISES. [AMC] hereby demises and lets to [Business 21] and [Business 21] hereby Leases and takes from [AMC], upon the terms and conditions of this Lease, the Demised Premises now, or to be erected in and as a part of the Shopping Center, the Demised Premises consisting of a second floor

> office having a width and depth measured approximately from the exterior of outside wall(s) and/or the center line of the interior wall(s) together with the right to non-exclusive use, in common with others , of all such automobile parking areas, drive ways, footways and other facilities designed for common use and as may be installed or changed from time to time to [AMC], in the Shopping Center, subject, however to the terms and conditions of this Lease and to the Rules and Regulations for the use thereof as may be prescribed from time to time by [AMC]. If the demising walls of the Demised Premises are already constructed as of the date of this Lease, the dimensions and size of the Demised Premises as set forth on the Data Sheet will be controlling despite minor variations . . . .

Pl.'s Mot. Ex. A, at 5. Business 21 was responsible for "all work, improvements and modifications within or about the Demised Premises," *id.* at 21, and for providing "prompt written notice of any accident, fire or damages occurring on or to the Demised Premises and/or common areas or common facilities of the Shopping Center," *id.* at 7.[2] Business 21 was also required to maintain broad form comprehensive public liability insurance naming the landlord and its managing agent as additional insureds with minimum limits of $2 million per accident.

Business 21 obtained a Businessowners Coverage insurance policy from Selective (the Selective Policy) which provided coverage for additional insureds. The Selective Policy defined additional insureds as "any person or organization whom you have agreed in a written contract, written agreement or written permit that such person or organization be added as an additional insured on your policy," but only with respect to "[b]odily injury . . . caused, in whole or in part by your ongoing operations performed for that person or organization, 'your product' or premises owned or used by you." Pl.'s Mot. Ex. B-4, at 34. In its tender request, Liberty Mutual maintained the Underlying Defendants were entitled to coverage as additional insureds under the Selective Policy, noting the underlying action involved claims by a Business 21 employee.

---

[2] Notwithstanding any duty imposed on Business 21 by its lease with AMC Delancey Stoney Creek Partners, L.P., the Underlying Defendants admitted in their responses to interrogatories in the underlying action that it was their responsibility to maintain the sidewalks at the Stoney Creek Center.

3

Selective denied the tender request because "there [was] no evidence that [the] loss arose out of the operations of Business 21 . . . ." Def.'s Mot. For Summ. J. Ex. F.

In addition to bringing a negligence action against the Underlying Defendants, Harold Sacks also brought a claim pursuant to the Pennsylvania Workers' Compensation Act against Business 21, which Business 21 tendered to Selective. Selective's Workers' Compensation department investigated the incident, determined that Sacks was using the sidewalk within the course of his employment with Business 21 at the time of his fall, and paid him benefits for his injuries. In its claims file for the incident, a Selective designee, Donna Herbert, acknowledged the Sackses could not directly sue Business 21 because Harold Sacks's Workers Compensation Act claim, which was reviewed and handled by Selective, immunized Business 21 from any direct tort liability.

After Selective denied Liberty Mutual's tender request, Liberty Mutual continued to defend the Underlying Defendants in the underlying action and also brought the instant declaratory judgment action. While this action was pending, Liberty Mutual settled the underlying action. Liberty Mutual now seeks a declaratory judgment that Selective (1) had a duty to defend and indemnify the Underlying Defendants as additional insureds under the Selective Policy, and (2) must reimburse Liberty Mutual for the defense costs and indemnity it paid in connection with the underlying action, as well as all counsel fees and costs associated with the incident and Selective's denial of coverage. After this Court denied Selective's motion to dismiss, the case proceeded to discovery. Following discovery, both parties have moved for summary judgment.

**DISCUSSION**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material" facts are those facts "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the [non-moving] party." *Id*.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citation and internal quotation marks omitted). To defeat summary judgment, "the non-moving party must present more than a mere scintilla of evidence; there must be evidence on which the jury could reasonably find for the [non-movant]." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (alteration in original) (citation and internal quotation marks omitted).

To determine whether Selective had a duty to defend the Underlying Defendants under Pennsylvania law, the Court must "defin[e] the scope of coverage under the insurance policy on which the insured relies [here, the Selective Policy] and compar[e] the scope of coverage to the allegations of the underlying complaint." *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 673 (3d Cir. 2016). "If the allegations of the underlying complaint *potentially* could support recovery under the policy, there will be coverage at least to the extent that the insurer has a duty to defend its insured in the case." *Id*.; *see also Stidham v. Millvale Sportsmen's Club*, 618 A.2d 945, 953–54 (Pa. Super. Ct. 1992) ("If coverage (indemnification) depends upon the existence or

nonexistence of undetermined facts outside the complaint, until the claim is narrowed to one patently outside the policy coverage, the insurer has a duty to defend claims against its insured." (citations omitted)).

"Pennsylvania adheres to the 'four corners' rule . . . under which an insurer's potential duty to defend is 'determined *solely* by the allegations of the complaint in the [underlying] action.'" *Id.* at 673 (quoting *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 896 (Pa. 2006) (alteration in original)). "Under the four corners rule, a court in determining if there is coverage does not look outside the allegations of the underlying complaint or consider extrinsic evidence." *Id.* As the Third Circuit Court of Appeals has recognized, the four corners rule actually involves eight corners because the court must also construe the insurance policy at issue. *See id.* at 673 n.9.

Here, whether Selective had a duty to defend turns on the meaning of the phrase "premises owned or used by [Business 21]" contained within the Selective Policy. Under Pennsylvania law, "[t]he construction of an insurance policy is a question of law which must be resolved by the courts." *Hunyady v. Aetna Life & Cas.*, 578 A.2d 1312, 1313 (Pa. Super. Ct. 1990). The goal of interpreting an insurance contract is "to ascertain the intent of the parties as manifested by the language of the written instrument." *Madison Const. Co. v. Harlesville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999). "[A] court must construe an insurance contract to give effect to the plain meaning of all provisions and to avoid ambiguities." *Selective Ins. Co. of S.C. v. Lower Providence Twp.*, No. 12-0800, 2013 WL 3213348, at *8 (E.D. Pa. June 26, 2013) (citing *Masters v. Celina Mut. Ins. Co.*, 224 A.2d 774, 776 (Pa. Super. Ct. 1966)). However, a court may inform its understanding of terms by considering their dictionary definitions. *See, e.g.*, *Municipality of Mt. Lebonon v. Reliance Ins. Co.*, 778 A.2d 1228, 1232 (Pa. Super. Ct. 2001).

"When the language of a policy is clear and unambiguous, a court is required to give effect to that language." *401 Fourth St., Inc. v. Investors Ins. Grp.*, 879 A.2d 166, 171 (Pa. 2005). If there is an ambiguity in the policy, it must be construed "in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage." *Ramara*, 814 F.3d at 674 (citation and internal quotation marks omitted). The test for determining whether a provision is ambiguous is whether "reasonably intelligent [people] on considering [the language] in the context of the entire policy would honestly differ as to its meaning." *Celley v. Mut. Benefit Health & Accident Ass'n*, 324 A.2d 430, 434 (Pa. Super. Ct. 1974).

Selective argues that "premises owned or used by [Business 21]" refers only to the internal space leased by Business 21 for its operations, asserting that the sidewalk used by Sacks was not a part of the "Demised Premises." Conversely, Liberty Mutual asserts that the language refers to Business 21's internal operating space along with its right to use the Stoney Creek Center common areas. The interpretation of this phrase depends on what Selective and Business 21 intended to mean by "premises." As the parties demonstrate, there is a potential ambiguity because "premises" may mean either: (A) the internal operating space of Business 21, or (B) the internal operating space of Business 21 and the right to use the common areas. Because the Selective Policy does not expressly define "premises" and due to the potential ambiguity, the Court looks to the dictionary definitions of "premises" to inform its interpretation of the Selective Policy.

The 11th edition of the Merriam-Webster Dictionary provides four definitions for "premises," including

> [a] property that is conveyed by bequest or deed;
> [b] a specified piece or tract of land with the structures on it;

[c] a building, buildings, or part of a building covered by or within the stated terms of a policy (as of fire insurance); or
[d] the place of business of an enterprise or institution.[3]

In addition, the 10th edition of Black's Law Dictionary defines "premises" as

[1] [t]he part of a deed that describes the land being conveyed, as well as naming the parties and identifying relevant facts or explaining the reasons for the deed;
[2] [a] house or building, along with its grounds; esp., the buildings and land that a shop, restaurant, company, etc. uses . . . Premises (= a house or building)."

*Premises*, BLACK'S LAW DICTIONARY (10th ed. 2014). These definitions, however, do not aid in interpreting the Selective Policy because they do not indicate whether "premises" is typically defined to encompass a lessee's secondary rights, such as the right to use a common area. As a result, because there remains a possible ambiguity in the Selective Policy, the Court must look to the surrounding context to resolve the question of whether there is an ambiguity.

Under Pennsylvania law, the existence of ambiguity in an insurance policy cannot be resolved without looking to the context of the underlying dispute. *Lititz Mut. Ins. Co. v. Steely*, 785 A.2d 975, 978-80 (Pa. 2001) ("Whether ambiguity exists cannot be resolved in a vacuum . . . but must instead be considered in reference to a specific set of facts."). "In other words, [an] ambiguity cannot be measured in the abstract; rather, the policy language must be tested against the facts of the case." *Consolidated Rail Corp. v. ACE Prop. & Cas. Ins. Co.*, 182 A.3d 1011, 1026 (Pa. Super. Ct. 2018).

In this instance, the Selective Policy provides that an additional insured is "any person or organization whom [Business 21] ha[s] agreed to [list as an additional insured] in a written contract, written agreement, or written permit . . . ." Def.'s Mot. Ex. B-6, at 34. The written agreement making the Underlying Defendants potential additional insureds under the Selective

---

[3] *Premises*, MERRIAM-WEBSTER DICTIONARY, http://unabridged.merriam-webster.com/unabridged/premises (last visited Sept. 27, 2018).

Policy is the lease agreement where Business 21 leased the space in the Stoney Creek Center. Thus, to ascertain the meaning of "premises," the lease agreement must be considered as the surrounding factual circumstances. *See Minges Creek LLC v. Royal Ins. Co. of Am.*, 442 F.3d 953, 957-58 (6th Cir. 2006) (using the lease agreement between the owner of shopping center and a tenant to determine the meaning of "premises owned or used by [the tenant]" in an indemnity action arising from a slip-and-fall that occurred in the shopping center's common area).

The lease agreement demonstrates that the Business 21 and Selective intended for "premises" to mean the internal space where Business 21 conducted its operations—not the common areas where Business 21 had a non-exclusive right to use the walkways and parking lot. The lease agreement provides:

> 2. DEMISED PREMISES. [AMC] hereby demises and lets to [Business 21] and [Business 21] hereby Leases and takes from [AMC], upon the terms and conditions of this Lease, *the Demised Premises now, or to be erected in and as a part of the Shopping Center*, the Demised Premises consisting of a second floor office having a width and depth measured approximately *from the exterior of outside wall(s) and/or the center line of the interior wall(s)* together *with* the right to non-exclusive use, in common with others, of all such automobile parking areas, drive ways, footways and other facilities designed for common use and as may be installed or changed from time to time to [AMC], in the Shopping Center, subject, however to the terms and conditions of this Lease and to the Rules and Regulations for the use thereof as may be prescribed from time to time by [AMC]. If the *demising walls of the Demised Premises* are already constructed as of the date of this Lease, the *dimensions and size of the Demised Premises* as set forth on the Data Sheet will be controlling despite minor variations . . . .

Pl.'s Mot. for Summ. J. Ex. A, at 5 (emphasis added). This language demonstrates a separation between the Demised Premises—the internal operating space where Business 21 operated—and the non-exclusive right to use the common areas—which came in an addition to the Demised Premises. *Id.* The remaining portions of the lease agreement further support this interpretation because: (1) Business 21 was not responsible for maintenance of the common areas, Def.'s Mot.

9

Ex. C, at 3; (2) the drawings depicting the Demised Premises only reference and show the interior space of that Business 21 had the exclusive right to use, *id.* at Ex. C; and (3) the lease agreement repeatedly uses "within" when referring to the Demised Premises, *see generally id.* at Ex. A. Hence, the plain language of the lease agreement demonstrates that "premises" refers to Business 21's internal operating space only and does not encompass Business 21's right to use the common areas. In sum, because the Selective Policy refers to the lease agreement, it follows that Business 21 and Selective intended "premises" to have the same meaning as set forth in the lease agreement—Business 21's internal operating space—and therefore the Selective Policy language of "premises owned or used by [Business 21]" is unambiguous.[4]

Applying this interpretation, Selective did not have a duty to defend the Underlying Defendants because they were not additional insureds under the Selective Policy. As set forth in the underlying complaint, Sacks was injured while walking on the sidewalk located outside of Business 21's internal operating space. Consequently, the accident resulting in bodily injury did not occur on the "premises owned or used by [Business 21]" and the Underlying Defendants were not additional insureds under the Selective Policy. Therefore, because there is no genuine

---

[4] The Court also notes that the converse interpretation of the Selective Policy would result in an unreasonable interpretation beyond the intent of Business 21 and Selective under the Selective Policy. Under Pennsylvania law, a court should adopt an interpretation that provides the most reasonable, probable, and natural intention of the parties. *Galvin v. Occidental Life Ins. Co. of Cal.*, 211 A.2d 120, 122 (Pa. Super. Ct. 1965). Here, if "premises" were defined to include Business 21's non-exclusive right to use the shopping center's common areas, the Underlying Defendants would be able to seek indemnity under the Selective Policy if an employee or patron of another store was injured in the common area. This "blank check" indemnity is neither a reasonable interpretation of the Selective Policy, nor is it the probable intent of Selective or Business 21. *See also Minges Creek*, 442 F.3d at 958; *Beazer Homes Corp. v. Selective Ins. Grp., Inc.*, No. 13-215, 2014 WL 3955746, at *2 (D. Del. Aug. 8, 2014) (refusing to broadly interpret the phrase "premises owned or used by you" because it would result in the policy covering "any injury caused by any premises in which [the underlying defendant] had ever done work, regardless of whether [the underlying defendant] was at fault or if the injury had anything to do with their actions").

10

dispute of material fact that Sacks's accident occurred off the "premises," Selective is entitled to judgment as a matter of law.[5]

Finally, having found that Selective had no duty to defend the Underlying Defendants, it follows that Selective also did not have a duty to indemnify the Underlying Defendants. *See Ramara*, 814 F.3d at 673 ("Because an insurer's duty to defend its insured in a lawsuit is broader than its duty to indemnify, it necessarily follows that it will not have a duty to indemnify an insured for a judgment in an action for which it was not required to provide defense." (citations omitted)).

**CONCLUSION**

For the reasons set forth above, the Court will grant Selective's motion for summary judgment and enter judgment in favor of Selective on all counts.

An appropriate Order follows.

BY THE COURT:


  /s/ Juan R. Sánchez
Juan R. Sánchez, C.J.

---

[5] The Court recognizes that this analysis departs from its analysis in the February 8, 2017 Order denying Selective's motion to dismiss. This departure, however, is a result of the different standards the Court must apply at each stage. At the motion to dismiss stage, the Court was required to liberally construe Liberty Mutual's allegations to determine if recovery was *plausible*. Conversely, at the summary judgment stage, the Court is required to determine whether Liberty Mutual is *entitled* to recovery as a matter of law.